UNITED STATES of America

v.

Darvin Ray PEACHEY.

No. 4:CR–93–208.

United States District Court,
M.D. Pennsylvania.

June 1, 1994.

George Rocktashel, Asst. U.S. Atty., Lewisburg, PA, for U.S.

Charles Rector, Kollas, Costopoulis, Foster & Fields, Lemoyne, PA, for defendant.

*OPINION*

MUIR, District Judge.

## I. Introduction.

On August 26, 1993, the Grand Jury for the Middle District of Pennsylvania, sitting in Williamsport, returned a nine-count indictment charging Darvin Ray Peachey, Judith Renee Walker, and Betty Mae Walker with criminal conspiracy, witness tampering, obstruction of justice, false statements, perjury before the grand jury and aiding and abetting. On September 28, 1993, Peachey appeared before the Court and entered a plea of not guilty to the indictment. On December 13, 1993, Peachey entered a plea of guilty to a superseding information charging him with criminal conspiracy, arson, and aiding and abetting. The Court ordered a presentence investigation and scheduled a presentence conference for March 7, 1994.

On February 18, 1994, a presentence report was submitted to the Court. The report indicates that the base offense level is 24 pursuant to U.S.S.G. § 2K1.4(a)(1), the total offense level is 27 and the guideline imprisonment range is 70 to 87 months. In paragraph 58 of the report various factors were identified that could warrant an upward departure from the guideline imprisonment range. Peachey filed an objection to the reference in ¶ 58 regarding the existence of factors that could warrant an upward departure from the guidelines. However, in violation of ¶ 8 of our order of December 16, 1993, Peachey did not file a brief in support of his objection. At the presentence conference on March 7, 1994, the failure to file a brief in support of the objection was called to counsel's attention.

By order of March 10, 1994, Peachey was granted an additional period of time within which to file a brief in support of the objection. On March 21, 1994, Peachey filed a brief in support of the objection to ¶ 58 of the presentence report. On April 4, 1994, the Government filed a brief in opposition to the objection. A reply brief was filed by Peachey on April 13, 1994.

Paragraph 58 of the presentence report states as follows:

The Probation Officer has identified no factors warranting a downward departure. Aggravating circumstances that could warrant an upward departure include the following: 1) 139 cattle, 38 horses and numerous other farm animals perished in the fires; 2) The emotional trauma experienced by Amish farmers resulting from the death of their animals is significant; 3) The loss attributable to the fires amounted to over one million dollars; and 4) The arsons created a substantial risk of death or serious bodily injury to volunteers and firefighters from approximately 24 fire departments.

After reviewing the briefs, it was not clear to us whether Peachey was objecting to the factual statements in ¶ 58 or only to the conclusion of the probation officer that the circumstances identified may warrant an upward departure. In light of that uncertainty, by order of April 14, 1994, we directed Peachey to file a statement indicating whether he objected to the factual statements set forth in ¶ 58 or whether he objected only to the conclusion by the probation officer that the factual circumstances identified might warrant an upward departure. We also directed Peachey to file a statement with the Court stating whether or not he objected to any of our findings of fact set forth in our opinion of April 11, 1994, relating to his co-defendants, the Walkers.

█ Peachey contended that the Government's briefing at our request of the issue of an upward departure "was contrary to the plea agreement in this case." (Peachey's reply brief filed April 13, 1994, p. 1). Therefore, we granted Peachey an opportunity to withdraw his guilty plea and set May 6, 1994, as the deadline for filing the statement relating to ¶ 58 of the presentence report and our findings of fact and for filing a motion to withdraw Peachey's guilty plea. On May 5, 1994, the Defendant filed a statement in accordance with our order of April 14, 1994. That statement indicates as follows:

(1) Defendant, Darvin Ray Peachey, does not object to the factual statements contained in ¶ 58 of the pre-sentence report. Rather, Defendant is only objecting to the conclusion of the Probation Officer that the

circumstances identified may warrant an upward departure.

(2) Defendant does not object to Your Honorable Court's Findings of Fact set forth in your opinion of April 11, 1994, relating to his co-defendants Judith Walker and Betty Walker.

(3) Defendant is prepared to proceed with sentencing during the next available term of Court.

On May 9, 1994, we issued an order granting Peachey and the Government until May 20, 1994, to file a request for a presentence hearing if either was of the view that there were disputed issues of fact or either was of the view that additional evidence was either necessary or advisable on the question of upward departure. Neither Peachey nor the Government filed a request for a presentence hearing. Therefore, we are of the view that the question of upward departure is ripe for disposition. The following are the findings of fact set forth in our opinion of April 14, 1994, relating to Peachey's co-defendants, the Walkers, and our discussion relating to whether an upward departure is warranted in Peachey's case. All of the findings are undisputed by Peachey.

## II. Findings of Fact.

1. Co-defendant Darvin Ray Peachey, by pleading guilty to the superseding information filed in United States v. Darvin Ray Peachey, 4:CR-93-208, admitted maliciously damaging and destroying and attempting to damage and destroy, by means of fire, the following buildings and property on March 14, 1992, and March 15, 1992, in violation of 18 U.S.C. Section 844(i):

| VICTIM | LOCATION | BUILDING | PROPERTY IN BUILDING |
| --- | --- | --- | --- |
| Samuel Yoder | R.D. # 1, Box 125 Belleville, PA (Union Township) | 2-story frame/story barn with slate roof approx. 40' x 84' | 37 dairy stock cows, 7 horses, farm equipment and machinery and feed |
| Samuel Christ Yoder | R.D. # 1 Box 124 Belleville, PA (Union Township) | 2-story frame/ stone barn with metal roof | hay and feed |
| Isaac S. Yoder | R.D. # 1 Box 243 Milroy, PA (Armagh Township) | 2-story frame/ block/stone barn L-shaped | 33 dairy stock cows, 7 horses, farm equip., machinery and feed |
| Samuel Moses Yoder | HRC 61, Box 41 Belleville, PA (Menno Township) | 2-story frame/stone barn | 30 dairy stock cows, 11 horses, 4 pigs, farm equipment, machinery and feed |

| VICTIM | LOCATION | BUILDING | PROPERTY IN BUILDING |
|---|---|---|---|
| Michael Joseph Hostetler | R.D. # 2 Box 54 Milroy, PA (Armagh Township) | 2–story frame/ block/stone barn | 4 cows, 3 horses, farm equipment, machinery and feed |
| Esle Michael Hostetler | R.D. # 2 Box 63 Milroy, PA (Armagh Township) | 2–story frame/ stone barn | 21 cattle 10 horses farm equip., machinery and feed |
| Christ R. Yoder | R.D. # 1 Box 37 Milroy, PA (Armagh Township) | 2–story frame/ stone barn | 14 cattle, 30 rabbits, farm equip., machinery and feed |
| Raymond Samuel Hostetler | R.D. # 1 Box 352 Belleville, PA (Menno Township) | 2–story frame/ stone barn | feed and fodder |
| John Reed Rodgers | R.D. # 1 Box 129 Belleville, PA (Union Township) | 1–story frame/ storage shed for farm equipment | grain elevator, fodder |

2. All of the buildings burned by Peachey were located in remote, rural areas of Mifflin County at considerable distances from the nearest fire hydrants.

3. With the exception of buildings owned by John Reed Rodgers and Raymond Samuel Hostetler, the buildings burned by Peachey were located next to residences occupied by Amish families who because of their religious beliefs do not have smoke detectors, fire alarms or telephones for use in case of fire.

4. Peachey was aware that all but 2 of the owners of the buildings were Amish and was aware of their beliefs set forth in the preceding paragraph.

5. The fires started by Peachey were reported to various fire companies between 11:42 p.m. on March 14, 1992, and 1:08 a.m. on March 15, 1992.

6. Approximately 24 fire companies from four counties responded to the fires.

7. The number of fires started within approximately one hour and twenty-six minutes strained the fire fighting and emergency resources available in the Mifflin County area.

8. Isaac S. Yoder's farm is located in the vicinity of Church Lane.

9. The heat and intensity of the burning barn at Isaac S. Yoder's farm caused the interior window sills on the third floor of the house which was located within 50 to 75 feet of the barn to smolder and smoke.

10. When fire fighters arrived at Isaac S. Yoder's farm the barn was fully engulfed by flames. The fire fighters applied their limited water supply to the nearby residence because they believed the barn fire presented a serious threat to the residence.

11. Because of the apparent risk of the barn fire at Isaac S. Yoder's farm spreading to the nearby house, fire fighters entered the residence to evacuate the occupants.

12. Because of the apparent risk of the barn fire at Isaac S. Yoder's farm spreading to the nearby house, fire fighters and residents of the home began to remove furniture and other belongings from the residence.

13. During the first 10 to 15 minutes after arriving at the barn fire at Isaac S. Yoder's farm, fire fighters had an insufficient supply of water to fight the barn fire and protect the nearby home.

14. Fire fighters at Isaac S. Yoder's farm observed fire damage to the siding of the residence.

15. Christ R. Yoder's farm is located in the vicinity of Coffee Run Road.

16. The heat and intensity of the burning barn at Christ R. Yoder's farm caused the siding on the house which is located within 35 to 40 feet of the barn to melt and hang loose.

17. Fire fighters at the fire at Christ R. Yoder's farm found the barn fully engulfed by flames. The fire fighters applied their limited water supply to the nearby residence because they believed the barn fire presented a serious threat to the residence.

18. A shift in the wind caused the barn fire at Christ R. Yoder's farm to move toward the nearby residence.

19. When they initially arrived at Christ R. Yoder's farm, the fire fighters had an insufficient supply of water to fight the barn fire and protect the nearby home because the necessary fire equipment was occupied in fighting the other barn fires in Mifflin County set by Peachey.

20. The fire at Christ R. Yoder's farm scorched a fire fighter's gear and helmet when the wind shifted.

21. Volunteer fire fighters observed the burning barn on Samuel Moses Yoder's farm and entered the nearby residence to evacuate the sleeping occupants.

22. Fire fighters at Samuel Moses Yoder's farm found the barn fully engulfed by flames. The fire fighters decided to apply their limited water supply to the nearby residence, located within 75 feet of the burning barn, because they believed the barn fire presented a serious threat to the residence.

23. When fire fighters at Samuel Moses Yoder's farm applied water to the residence, steam was produced because the residence was hot from the intense fire at the barn.

24. Samuel Isaac Yoder's farm is located in the vicinity of Plum Bottom.

25. Fire fighters at Samuel Isaac Yoder's farm observed farm animals on fire running from the burning barn.

26. Fire fighter Steven Stringfellow, Chief of the Milroy Hose Company, injured his back during efforts to fight the fire at the farm of Michael Joseph Hostetler in the vicinity of Back Mountain Road. As a result of his injury Stringfellow required medical treatment and missed two days of work.

27. Immediately before Peachey set the barns on fire, Peachey and Judith Renee Walker drove close to the nearby residences.

28. Judith Renee Walker accompanied Peachey in Peachey's car when all the fires were set by him.

29. With the exception of the storage shed owned by John Reed Rodgers, almost all, if not all, of the buildings burned by Peachey were located within 25 to 200 feet of occupied residences.

30. Betty Mae Walker was not a participant or an accomplice in the arson fires which occurred on March 14 and 15, 1992.

31. The fires that were set involved buildings which were not intended primarily for human occupation or residence.

32. Judith Renee Walker did not knowingly or recklessly create a situation where there was a substantial risk of death or serious injury to another person.

### III. Discussion.

■ In our order of March 10, 1994, we notified Peachey that we were "considering an upward departure because of the extremely large number of acts of arson committed by him, the consequent danger to persons near or at the scenes of the fire and the extremely large amount of damage incident thereto . . . ." We are of the view that the factors identified in our order of March 10, 1994, and in ¶ 58 of the presentence report when viewed collectively describe an

atypical case of arson, the circumstances and ramifications of which have not been addressed adequately by § 2K1.4(a)(1) of the Sentencing Guidelines, the provision under which Peachey's base offense level is determined. The above findings of fact demonstrate that this is an atypical case of arson.

The circumstances justifying an upward departure in Peachey's case include the extremely large number of acts of arson committed by him, the risk and danger to persons occupying dwellings near the fires, the risk and danger to the fire fighters from approximately 24 fire departments and to the public safety and welfare of persons in the community because of the substantial strain on available fire emergency resources in Mifflin County. Section 5K2.7 of the Sentencing Guidelines states:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with the governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

The number of fires started by Peachey within approximately 90 minutes greatly strained the emergency and fire fighting resources available in Mifflin County during the late evening of March 14, 1992, and the early morning hours of March 15, 1992. As indicated in the presentence report and in the findings of fact set forth above, fire fighters from approximately 24 fire departments in Mifflin County and three surrounding counties responded to the fires started by Peachey. The remote, rural locations of the fires and the scarcity of available water exacerbated the difficulties encountered by fire fighters fighting the fires and protecting the nearby residences.

■ Section 5K2.7 "is concerned with the degree of disruption and the importance of the governmental function disrupted." *United States vs. Flinn*, 18 F.3d 826, 829 (10th Cir. (N.M.)). Peachey's conduct implicated an important governmental function, i.e. the ability of local communities quickly and effectively to respond to fires and other emergencies. The scope and magnitude of the blazes disrupted that function to an extent exceeding the effect a typical barn fire would have had on emergency resources. Peachey's conduct caused a significant disruption of a vital governmental function, the fire fighting and emergency response capability in Mifflin County and nearby counties on the night of the blazes.

The increased burden on emergency response resources resulting from Peachey's conduct is not inherent in the offense of arson. Although every fire is somewhat disruptive, the number of fire companies, fire and emergency personnel, and fire equipment required to respond to the fires in this case went far beyond the typical expenditure of local fire and emergency resources necessary to fight a single fire. This is therefore the unusual case of arson, where the disruption is so "atypically greater as to exceed the level of interference inherent in the offense." *United States vs. Sarault*, 975 F.2d 17, 19–20 (1st Cir.1992). An upward departure under § 5K2.7 therefore is appropriate.

■ In addition to § 5K2.7, § 5K2.14 concerning public welfare also affords a basis for an upward departure. That provision states:

> If national security, public health or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense.

Arson is treated by the guidelines in Part K of the Sentencing Guidelines as an offense involving public safety; nevertheless, an upward departure is appropriate if we find that the danger to the public arising from the facts of this case was "present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." Sentencing Guidelines, § 5K2.0, Grounds for Departure (Policy Statement). Section 5K2.0 is inartfully drawn. There is no con-

viction until sentencing. We construe the sentence as if it concluded with "involved in the offense for which sentence is to be imposed."

Although the arson provision, § 2K1.4, includes a computation of the offense level based on a substantial risk of death or serious bodily injury to any person other than a participant in the offense, including fire fighters and other emergency and law enforcement personnel who respond to a fire, the sheer number of fires started by Peachey in such a short time and the concomitant strain on emergency resources during that period created a risk to public health and safety of a degree and magnitude not adequately addressed by § 2K1.4 and substantially in excess of that which is ordinarily involved in the offense of arson.

The risk created by Peachey went beyond the risk identified in the arson guidelines concerning occupants in nearby dwellings or fire fighters responding to the blazes. By so taxing the emergency response capability, Peachey put the residents of Mifflin County and contiguous locales at significant risk, should fires unrelated to the barn fires have occurred, or another serious emergency developed during the same time period as the fires set by Peachey. He thus created a widespread risk to public welfare and safety that implicated the residents in Mifflin County and other communities whose fire fighting and emergency response capabilities were diminished when fire fighters from those areas responded to the fires set by Peachey.

In conclusion, we are of the view that §§ 5K2.7 and 5K2.14 of the sentencing guidelines afford grounds for an upward departure in this case and we will depart upward from the guidelines three offense levels which seems reasonable to us under the circumstances. *Cf. United States vs. Kikumura,* 918 F.2d 1084, 1118–1119 (3rd Cir.1990).

An appropriate order will be entered.

### ORDER

1. Defendant's objection to ¶ 58 of the presentence report is overruled.

2. The sentence in the above captioned case will be imposed in Williamsport on June 8, 1994, at 9:00 a.m.